## WOOLSEY R. HOPKINS, ADMINISTRATOR, APPEAL FROM PROBATE.

Third Judicial District, New Haven, January Term, 1905.

TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL AND PRENTICE, Js.

The succession tax law of 1897 (General Statutes, §§ 2367–2377) was framed in view of the established principle that the transmission of personal property, whether by will or by statute, is governed by the law of the decedent's domicil at the time of his death.

The amount of the death duty exacted by the statute, upon the decease of a domiciled resident of this State, is to be computed upon the appraised value of all of his Connecticut real estate and of all his personal property, wherever situated, less the debts, expenses of settlement, and the statutory deduction of $10,000; or, in other words, upon the net value, less $10,000, of all the property which passes under our law to his beneficiaries. And therefore all the personal property of such decedent, wherever located, should be inventoried and appraised in order to enable the probate court to compute the amount of the prescribed duty or tax.

If such property or any part of it is not inventoried, the probate court may order the executor or administrator to supply the omission by filing an additional inventory and appraisal; and the mere fact that the property omitted is within the territorial limits of another State, where it is subject to, or has undergone, ancillary administration and further taxation, is immaterial.

The imposition of taxation in such manner that those who may feel its ultimate stress shall, under all circumstances, bear an equal burden, is practically impossible; and our succession tax law is, on the whole, just and equitable in its resulting effects, and adapted to avoid peculiar difficulties and to meet with fairness the interstate obligations attendant upon the imposition of death duties.

The will of a domiciled resident of this State may be proved by an exemplified copy if the original has been admitted to probate in another State as a basis for the grant of ancillary administration.

Argued January 20th—decided April 20th, 1905.

APPEAL from an order and decree of the Court of Probate for the district of Stamford determining the amount of the succession tax due from the estate of Mary F. Hopkins, deceased, taken to the Superior Court in Fairfield County, transferred by mutual consent to the Superior Court in Hartford County, and reserved by that court, *Thayer, J.,* upon an agreed statement of facts, for the advice of this court. *Superior Court advised to affirm the order of the Court of Probate.*

On May 18th, 1898, and October 11th of the same year, Mary Frances Hopkins duly executed her last will and testament, and codicil thereto, describing herself as a resident of Stamford, Connecticut. She died August 27th, 1899, a resident of and domiciled in Connecticut. The executors named in her will were her sons, Woolsey and Sheldon Hopkins, and William G. Verplanck; Woolsey Hopkins and William G. Verplanck resided in New York, and Sheldon Hopkins resided in Connecticut. On October 21st, 1902, the will and codicil were exhibited and proved in the Court of Probate for the district of Stamford, in the manner hereinafter set forth; and on January 3d, 1903, the surviving executors named in the will having been duly cited to appear and qualify in said court as executors, and having refused and neglected so to do, the court appointed Woolsey R. Hopkins, husband of the testatrix, administrator with the will annexed. On January 28th, 1903, said administrator filed an inventory, which contained the following items : Real estate at Stamford (appraised at $50,000) ;——shares of stock—Standard Oil Company of New Jersey—the certificate of said stock being at Stamford at testatrix's death (appraised at $20,790); personal effects (appraised at $5,538) ; cash on deposit at Stamford, $3,093.04. It also contained items of the testatrix's other personal property, stated in a separate list, with explanations. These items consisted of cash and credits on deposit in New York, $10,536.27, shares in the capital stock of corporations organized under the laws of Connecticut, New York, and other States, and of the United States, bonds of such corporations,

shares of stock of unincorporated associations, notes of residents of other States than Connecticut secured by mortgage on land in such States, unsecured notes of residents of other States, and bonds of the State of North Carolina; all of which stock and other securities were appraised at $794,458.79. The evidences of ownership in the personal property appraised at this sum were kept in New York by the testatrix at the time of her death. All the items in said inventory were appraised by appraisers appointed by the Court of Probate. Subsequently, and within four months after the grant of administration in this State, upon the application of Sheldon Hopkins, a person interested in said estate, said court ordered a reappraisal of said estate, pursuant to statute, which was duly made and accepted and approved by the court, the total valuation being $884,416.10.

On April 18th, 1903, said administrator applied to the Court of Probate to fix the amount of the succession tax due the State, and on November 19th, 1903, by decree of that date, said court fixed the amount of the succession tax at $4,872.18. From this order and decree said administrator appealed to the Superior Court. The reasons of appeal assigned are: 1. The Act of 1897, under which the decree was passed, is void. 2. Section 5 of said Act is void. 3. Because the Court of Probate in the order appealed from found that estate of the testatrix of the value of $850,889.50 was subject to the State succession tax, notwithstanding it appears from the agreed statement of facts that part of the property so found subject to tax was not within the jurisdiction of the State, and none of said property, except the real estate, passed by will or by the inheritance laws of Connecticut, within the meaning of the succession tax Act. The appellee, Henry F. Gallup, treasurer of the State, demurred to the third reason of appeal, and thereupon the Superior Court, by the agreement and at the request of all the parties, reserved the cause for the advice of this court as to what judgment should be rendered therein.

The material facts, in addition to the facts above recited, which appear in the agreed statement of facts are these:—

*First.* The will, upon application of one of the executors, was admitted to probate on October 7th, 1899, by the Surrogate Court in the county and State of New York. All the executors named in the will duly qualified as executors in said Surrogate Court. They removed to New York the certificate of stock in the Standard Oil Company of New Jersey and the money on deposit in Stamford, and transferred to the legatee named in the will the personal effects at Stamford, and proceeded with the administration and settlement of the whole personal estate of the testatrix in New York, under the letters testamentary granted by said Surrogate Court. They paid the claims of all creditors who proved their claims in accordance with the order of notice made by said Surrogate Court, and there are no claims of unpaid creditors now known except the claim of the State treasurer to the succession tax. They paid the expenses of administration at New York. They paid the legatees under the will in money and by distribution of the assets, except the residuary legatees, and this action was approved by the Surrogate Court, which ordered a distribution of the residue in accordance with the provisions of the will; and in pursuance of this order they have distributed the residue, except about $3,000 which remains in their hands. All this was done before the appointment of an administrator by the Stamford Court of Probate.

*Second.* The executors paid the United States succession tax upon the whole estate of the testatrix, amounting to $11,128.82, and paid the New York State transfer tax, which is imposed upon the transfer by will or inheritance of property which is within that State when the decedent is a nonresident of the State at the time of his death, amounting to $5,228.28. Property of the estate, being capital stock of corporations created under other laws than those of the State of New York, and of national banks located elsewhere than in said State, being of the appraised value of $239,-866.25, was not included as subject to said transfer tax, and no death duty of any kind was paid in respect to said property, except through the payment of the United States tax.

*Third.* The testatrix in her will disposes of all her property. She gives the real estate in Connecticut to her husband for life, and upon his death the same, or the proceeds, if the whole or any part thereof shall have been sold by her executors, to her lineal descendants. She gives securities to the value of $200,000 to her executors, to pay over the income to her husband during his life, and upon his death to divide the principal among her lineal descendants. She disposes of the rest and residue of her property in varying forms for the benefit of her three children and their issue, except twenty-one small bequests aggregating about $5,000, and a life interest in $20,000 given to her son-in-law; the beneficial interest in her whole property (except that in the small legacies and life estate mentioned) goes to her husband and her lineal descendants.

*Fourth.* The will was proved before the Stamford Court of Probate upon the petition of the testatrix's husband, by filing and recording in said court an exemplified copy of the will and of the record of the proceedings proving the same in New York and with the letters testamentary issued thereon. Woolsey R. Hopkins, in his petition to the Court of Probate for the appointment of an administrator with the will annexed, asked the court to grant him administration in respect to any unadministered property that might be within the jurisdiction of the court, to the end that a suitable inventory might be filed showing the property subject to the succession tax due the State, and that said tax might be fixed and paid.

It was stipulated by the parties that the agreed statement of facts should form part of the reasons of appeal.

*Robert A. Fosdick,* for Woolsey R. Hopkins, administrator.

*William A. King,* Attorney-General, for the State.

HAMERSLEY, J. The act of 1897, " Providing for a Succession Tax " (General Statutes, §§ 2367–2377), was fully considered in the recent cases of *Nettleton's Appeal,* 76 Conn.

235, and *Gallup's Appeal*, ibid. 617.    These cases were appeals from the same probate order fixing the succession tax in the same estate, and constitute subtantially one case. The decisions then rendered did not turn upon the peculiar condition of the particular estate in settlement, but did turn upon the construction and effect of the Act in its essential features, and settled its meaning and legal effect as respects these features.    This determination involved a consideration of all the provisions of the Act in their relation to the conclusion reached, and substantially controls the disposition of the claims advanced in the present case.

The Act does not provide for the taxation of any property left by a decedent, nor of any person interested in his estate.    " The Act imposes death duties and prescribes their amount and the machinery convenient for their collection." A " death duty " as thus used is an exaction by the State, to be collected from the property left by a deceased person while in its custody, prescribed upon the occasion of his death and the consequent devolution of his property by force of its laws.    The particular name given the duty in any statute —as probate, legacy, succession, transfer, or estate tax or duty—depends for its meaning upon the terms of that statute.    A man's property is subject to taxation while in the custody of the law after his death, in a similar manner as before, which may create a lien upon the property in whosesoever hands it may come; a tax may be laid upon property immediately after it has devolved upon any person by will or inheritance, so as to be not easily distinguishable from a form of taxation sometimes called a legacy tax; a tax may be laid upon the execution of all documents, the conveyance of all property, and the signing of all receipts, which may include the documents, transfers, and receipts incident to the administration of the estate of a deceased person; but such taxes do not come within the true meaning of " death duty " as here used.    The succession tax provided for, as defined by the terms of the Act in force when the testatrix died, is a death duty prescribed in view of the death of a domiciled resident of this State whose

land within this State and whose personal property, wherever situate, is governed as to its disposition, distribution and succession, by the laws of this State; and of the death of a nonresident owning land within this State which is governed as to its distribution and succession by the same law; prescribed in respect to the beneficial interest which thus by force of our laws devolves upon all beneficiaries of the decedent; and fixed as to amount by a percentage upon the value of the whole interest thus devolving on the decedent's beneficial successors, based upon a valuation previously made of all the decedent's property inventoried by the administrator. The Act contains no express direction as to who shall compute the tax or the manner of computation; but by necessary implication, the duty of computation is placed upon the Court of Probate, proceeding in the following manner: A valuation is made of the whole interest that would, except for the tax, pass to all the decedent's beneficial successors, by deducting from the total amount of the valuation of all property left by the decedent (as it appears in the inventory and appraisal returned by the administrator and accepted by the court, or by a new appraisal that may be ordered at the instance of the State treasurer or any party interested), the amount of debts paid and expenses of administration, with other amounts required by the Act. A sum equal to one half of one per cent. upon such proportion of the beneficial interest thus valued as would pass to husband or wife, parents or lineal descendants, and three per cent. upon such proportion as would pass to any others, fixes the amount of the death duty or succession tax payable to the State, on occasion of that succession, by the administrator from property, or proceeds of property, which had belonged to the decedent. Neither the amount of the duty nor the process of computation is controlled by an actual valuation of the precise property each particular successor may receive, nor by the nature of his estate in that property. Whether the succession is statutory or testamentary, whether the estate in any particular property received is absolute or for life, the amount

of the duty imposed on occasion of each death and consequent succession, and the manner of its computation, is the same, although in § 2371 special provision is made in relation to the payment of a proportional part of this duty in certain cases. The Act makes no express provision for the collection and payment of the duty, except the direction to the administrator to pay the duty, and (by necessary implication) from the property or from the proceeds of the property of the decedent not applied to the satisfaction of debts and administration expenses. The administrator is empowered to sell so much of the estate as will enable him to pay the duty, and is made liable for failure to pay which is due to his own misconduct. The direction to sell a piece of property specifically bequeathed, unless the legatee shall pay to him a sum equal to the proportion of the duty based upon the value of that property, is in furtherance and not in abridgement of his power to sell any property in his hands when necessary to enable him to pay the duty. In so far as the Act relates to estates of domiciled residents, it imposes a death duty in respect to the succession that takes place within the jurisdiction of this State upon the death of every such person possessing land within this State and personal property wherever situate. The duty is not imposed unless the succession involves some beneficial succession, and in that case its amount is arbitrarily determined through the prescribed process, including an indirect valuation of the whole beneficial succession, and the administrator is charged with the payment of the whole duty from property remaining after the estate, whether testate or intestate, has been cleared of debts and administration expenses, and before distribution is completed. To this extent the Act affects the law of distribution.

The substantial and principal claim advanced by the appellant in this case is, that the Court of Probate, in computing the amount of the duty, necessarily held that the interest in the personal property owned by the decedent at the time of her death, wherever situate, which devolved upon

her beneficial successors in consequence of that death, did not pass by will or the inheritance laws of this State within the meaning of the Act of 1897, and therefore the court erred in computing the amount of the succession duty at $4,872.18.

This is the precise point settled by our former decisions. The Act is framed in view of the principle that personal property is bequeathed by will, and is descendible by inheritance, according to the law of the domicil, and that the disposition, distribution of, and succession to, personal property, wherever situated, is to be governed by the laws of that State where the owner had his domicil at the time of his death. *Gallup's Appeal*, 76 Conn. 617 ; *Wilkins* v. *Ellett*, 9 Wall. 740, 742 ; *Parsons* v. *Lyman*, 20 N. Y. 103 ; *Dammert* v. *Osborn*, 140 N. Y. 30. The duty imposed in respect to the property of a domiciled decedent depends upon the fact of the succession to all his personal property wherever situated, and does not depend upon the fact of a qualified succession of a particular person to some property within the State. The amount of the duty is fixed in reference to a valuation of the whole beneficial succession, based upon a valuation of all the personal property left by a decedent at his death. The right to lay such a duty is independent of the right to impose a direct tax upon all the property included in the succession, and its amount may properly depend upon a valuation of property included in the succession upon which the State could not impose a direct tax. In this respect, that is, the power of the State to fix the amount of such tax or duty with reference to the value of the relative property, upon all of which it might not be able to lay a direct tax, the succession duty is analogous to a franchise tax upon a corporation, and it has been held that in this particular there is no sound distinction between the two cases. *Plummer* v. *Coler*, 178 U. S. 115. It is the intent and meaning of the Act, as expressed through all its provisions and all the language used in view of these provisions, to provide for a succession tax of this kind, namely : a death duty upon the occasion of the succession

to all the personal property of a decedent, wherever situated, which takes place, in consequence of his death, within the jurisdiction of this State when such decedent was a domiciled resident thereof, measured as to amount in the manner described, and payable by the administrator from any property, remaining after the estate has been cleared, necessary to be used for the payment of the whole duty ; and this main purpose and meaning of the Act, expressed through all its provisions, is controlling in determining the meaning and effect of any subservient provision relating to the computation and payment of the duty. It is therefore evident that the prescribed computation of the duty by the Court of Probate having jurisdiction of the principal administration, and its payment by the principal administrator, should not be frustrated by the fact that one or more ancillary administrations are found necessary or appropriate for the purpose of clearing the estate, or for other purpose. The Act was framed in view of such possibility. Every administration granted in another State, not based upon the adjudicated fact of the decedent's domicil in that State but solely on the accidental situation of some personal property which may require the aid of the laws of that State for its reduction to possession, is an administration ancillary in its nature to the administration of the domicil, whether granted before or after the grant of domiciliary administration. And this is true in respect to estates testate as well as intestate. *Hutton* v. *Hutton*, 40 N. J. Eq. 461, 466 ; *Enohin* v. *Wylie*, 10 H. L. Cas. 1; *Frothingham* v. *Shaw*, 175 Mass. 59, 63 ; see 1 Woerner, Administration, * 360. The same principle of universal jurisprudence which recognizes the power or jurisdiction of a State to determine the succession to and distribution of personal property situate within other States, recognizes the power and duty of such States to provide local administrations in respect to such property in aid of the administration of the domicil. And our succession tax is computed with reference to the value of the whole beneficial succession which passes by force of our law, and payment of the tax thus computed is required from the prin-

cipal administrator, although some portion may be actually received by a beneficiary at the hands of an ancillary administrator.

It is suggested in argument that a condition may arise, especially where the succession is testamentary, such that, in the operation of the Act, the ultimate stress of the tax may fall much more heavily upon one or more of the beneficial successors than upon others. The Act clearly contemplates some such inequality in operation, although the desire of the legislature that the ultimate stress of the tax might, on the whole, be distributed as fairly as practicable consistently with the tax laid, should be assumed. The imposition of taxation in such manner that those who may feel its ultimate stress shall, under all circumstances, bear an equal burden, is practically impossible. The condition disclosed by the record in this case does not present an instance of glaring inequality, for it seems apparent that even if the duty found due the State should have to be paid by the appellant, either wholly from the land or assets situate here, or partly from funds reserved by the ancillary administration in New York applicable to such purpose, the ultimate stress of this duty will sift through the decedent's husband, children, and their lineal descendants, with substantial fairness. Assuming, however, that a condition may arise involving some glaring inequality among those who may feel the ultimate stress of the duty imposed, such possibility does not furnish sufficient ground for a construction of the Act different from that which we have given, and is insufficient to support any fair criticism of the Act. The possibility is a remote one, outside the normal course of events, and such remote possibilities of inequality attend most forms of taxation. The scheme of taxation adopted by the legislature in this Act in its application to estates, testate and intestate, of domiciled residents, contemplates a distribution, after the estate has been cleared of debts and administration expenses, by which the resulting burden of the succession tax imposed will fall upon the eventual beneficiaries under the succession unequally, but upon the whole

with substantial fairness. There may be a possibility of attempted evasions of the tax, and, perhaps, of courts in other States, charged with ancillary administration in aid of the jurisdiction of this State in respect to the distribution of such personal property, being misled in the discharge of their duties so as to effect more or less the ultimate stress of the tax; but the mere possibility of seriously questionable results from such causes does not discredit the Act as an exercise of the power of taxation, on the whole fair and equitable in its distribution of its resulting effects among those who expect benefits from the death of a property-owner, and just to the citizens of this State and other States who are all affected by taxation of this kind. After a re-examination of the Act in all its bearings, we are confirmed in the opinion expressed in *Gallup's Appeal*, 76 Conn. 617, 627, that "this scheme of taxation is framed upon established principles, and is adapted to avoid the peculiar difficulties and to meet with fairness the interstate obligations attending the imposition of death duties."

The appellant urges that inasmuch as a main portion of the assets had been distributed through ancillary administration in New York, the items of property thus distributed could not lawfully be included in the inventory here, and therefore the computation of the tax based upon a valuation of property unlawfully included in the inventory and appraisal is erroneous. An inventory, in its origin, was a means by which an heir or executor might, in accepting a succession, limit his liability to the property included in the inventory. This original purpose has to some extent affected the use of the inventory under our law; but its use is now regulated by statute, and serves various purposes, among which is the securing, through our probate records, all information relating to estates of deceased persons, needful to all persons interested therein and to the court in the performance of its statutory duties. *Atwater* v. *Barnes*, 21 Conn. 237, 242. The administrator is required to return an inventory within a fixed time after his appointment, but the Court of Probate may order him to return new and ad-

ditional inventories at subsequent times, and may direct him to include in the inventory the personal property of the deceased (being a domiciled resident) wherever situated. *Gallup's Appeal*, 76 Conn. 617. For treatment of somewhat similar statutes, see *In re Butler*, 38 N. Y. 397. The succession-tax law imposed new duties on the Court of Probate, and gave the court commensurate power in respect to inventories. In this case the inventory properly included all the personal property of the decedent at her death, wherever situated.

The proof of the will in the Stamford Court of Probate was not defective because proved by an exemplified and authenticated copy of the will as proved in the Surrogate Court in New York and the proceedings of that court thereon.

The Court of Probate, in granting administration with the will annexed, properly declined to limit the grant to the purposes specified by the appellant in his petition for administration. Payment of inheritance tax to the United States, and transfer tax to the State of New York, does not prevent payment of succession tax to this State. *Blackstone* v. *Miller*, 188 U. S. 189.

The order of the Court of Probate fixing the amount of the tax was attacked in the Superior Court, upon the ground that personal property of the testatrix situate without this State could not legally be included in the inventory, and that a computation of the tax based on a valuation of such property could not legally be made. The accuracy of the computation, if legally made, was not questioned, but impliedly admitted in the reasons of appeal filed in the Superior Court, and in view of the agreed statement of facts and the stipulation of counsel for a reservation, the accuracy of the computation by the Court of Probate, based upon the valuation of the property included in the inventory and appraisal lawfully accepted by that court, must be treated as an admitted fact.

The Superior Court is advised to sustain the demurrer to the reasons of appeal and to render judgment affirming the

decree of the Court of Probate. No costs will be taxed in this court for either party.

In this opinion the other judges concurred.