WILLIAM A. MONTGOMERY ET AL., Appellants, v. G. S. GILBERTSON, as Treasurer of the State of Iowa, Appellee.

Inheritance tax: PROPERTY SUBJECT TO. An inheritance tax attached to bequests of personal property to collateral heirs where the estate was still subject to the control of the Probate Court at the time the law became effective, and the same could not be defeated by any unauthorized settlement and distribution, made prior to the filing and approval of the executor's final report, and within the year allowed for filing claims and final settlement.

*Appeal from Benton District Court.*— HON. G. W. BURNHAM, Judge.

FRIDAY, MAY 17, 1907.

ACTION to enjoin and restrain the defendant, who was the State Treasurer, from collecting an inheritance tax upon certain property which passed to plaintiffs in virtue of the

will of one Thos. Montgomery, who died in Benton county October 3, 1897.' The trial court dismissed the petition, and plaintiffs appeal. *Affirmed.*

*Tom H. Milner,* for appellants.

*Chas. W. Mullan,* Attorney, and *C. Nichols,* County Attorney, for appellee.

DEEMER, J.— Thos. Montgomery's will was admitted to probate in the Benton county court, November 4, 1897, and the executors thereby appointed,— Wm. A. Montgomery and Luther Fisher were appointed and qualified November 14th of that year. Deceased was a bachelor, and he devised and bequeathed his property to his collateral heirs, who are the plaintiffs herein. All were of age during any time material to our inquiry, save five children of Luther A. Fisher, to wit, Wm. H., Myrtle A., Mary E., Chas. M., and Jessie O. Fisher, and for these Luther A. Fisher was appointed guardian in April of the year 1899. The executors filed an inventory April 25, 1899, with list of heirs, accompanied with a final report; and time for hearing thereon was fixed for May 2, 1899. Four of the legatees under the will waived notice of the final report, and consented that the report be approved. Notice was also given by one publication in a newspaper issued May 5, 1899. Over date of May 2, 1899, all the legatees under the will — Luther Fisher signing as guardian for his wards — acknowledged full payment of all legacies under the will of the deceased, consented to the discharge of the executors, and waived notice of the filing and hearing of final report. Upon May 5th, as we understand it, the probate court made an order approving the final report and discharging the executors. It seems that proof of publication of notice of the appointment of the executors was not made until October 15, 1905. The receipt on the part of the legatees was filed May 4,

1899. The final report of the executors, after showing an inventory filed April 25, 1899, that they published notice of appointment and filed list of heirs, contains this recitation: " (4) That all claims against said estate of every kind and character have been fully paid, said claims being, in fact, only last sickness and funeral expenses of decedent; that executors have heretofore made full and complete distribution of assets of said estate of and to said several legatees named in said last will and testament of decedent, and there now remains nothing further to do in and about the premises, said estate having been fully settled, and more than a year elapsed since publication of notice thereof."

So far as material, the will of the deceased reads as follows:

(2)    All the rest, remainder and residue of my estate, real, personal and mixed, of which I die seised or possessed of, or to which I may be entitled, I will, devise and bequeath as follows, to wit:

To my nephew, Wm. A. Montgomery, I bequeath the sum of twelve thousand dollars ($12,000).

To my niece, Florence Montgomery, I bequeath the sum of twelve thousand dollars ($12,000).

To my niece Margaret Fisher, wife of Luther Fisher of Jefferson township, Poweshiek county, Iowa, I bequeath the sum of twelve thousand dollars ($12,000).

To my sister Elizabeth Jones, I bequeath the sum of one thousand dollars ($1,000).

To my sister-in-law, Mrs. Elizabeth Montgomery, I bequeath the sum of five hundred dollars ($500).

To the children of Mrs. Luther Fisher, aforesaid, viz., William H., Alice Myrtle, Mary Elsie, Charles Montgomery, and Jessie Olive Fisher, I bequeath each the sum of eight hundred dollars ($800).

The rest, residue and remainder of my estate of which I may die seised or possessed, I will, devise and bequeath to my nephew, William A. Montgomery, and to my nieces, Florence Montgomery, and Mrs. Luther Fisher, to be divided between them equally, share and share alike.

I hereby appoint my nephew Wm. A. Montgomery and

Mr. Luther Fisher, executors of this last will and testament. Hereby exonerating them and each of them from giving bonds for the performance and discharge of said trust, and I hereby authorize my said executors to sell and dispose of such of my estate as in their judgment may be advisable to raise sufficient means to pay off my debts and legacies named in this will, directing that they do not resort to the real estate until the personal property is first exhausted. I also will and direct that if it becomes necessary to resort to the sale of real estate for the purpose herein named, that my said executors may sell and dispose of any real estate necessary without an order of the court to do so.

Defendant was proceeding to collect an inheritance tax upon the personal property bequeathed by the second paragraph of the will to the collateral heirs, when plaintiffs brought this action to restrain him from so doing, claiming that distribution of the personal estate was made to the legatees under the will on or about November 16, 1897, and that the collateral inheritance tax law did not become valid and enforceable until April 8, 1898, according to the holding of this court in *Ferry v. Campbell,* 110 Iowa, 290; *Herriott v. Potter,* 115 Iowa, 648; *Gilbertson v. Ballard,* 125 Iowa, 420; *Weaver Estate,* 110 Iowa, 331, and other like cases. There is testimony to show that the executors made a distribution of the legacies under the will on or about the time named; they claiming to have paid the legacies to the Fisher children, to their father, who had not then been appointed their guardian. These children were then minors, and had not reached their majority when the executors were discharged. No receipts were given by the legatees until the one was prepared over date of May 2, 1899. Nor was any order of court obtained for the distribution of the estate until the final report was filed and acted upon. The original collateral inheritance tax law was passed by the Twenty-Sixth General Assembly, taking effect July 4, 1896. This was carried into the Code of 1897 as section 1476 *et seq.,* and an amendatory act

providing for notice was passed by the Twenty-Seventh General Assembly known as chapter 37, which went into effect April 8, 1898.

We have already referred to the proceedings of the probate court and of the executors, and, without repeating, it is manifest that the *Weaver case, supra,* does not apply, for there was no law as to inheritance taxes when the testator in that case died.    In *Ferry v. Campbell, supra,* we said: "As to the personal estate, the rule seems to be different, however.    While the distributive share is a vested interest — that is, vests in point of right at the time of the death of the intestate — yet the persons who take the amount to be received must be ascertained and determined by the probate court.    So long as the estate remains unsettled, the Legislature may cure any defects in the law creating a lien thereon, and the act may be made retroactive.    The cases heretofore cited so firmly settle this principle that we need do no more than refer to them."    It is true that in that case we held the law in certain particulars unconstitutional, but in that and subsequent cases we held that the defect might be cured by subsequent legislation.    See *Herriott v. Potter,* 115 Iowa, 650; *Blair v. Ostrander,* 109 Iowa, 204; *In re Rahrer,* 140 U. S. 545 (11 Sup. Ct. 865, 35 L. Ed. 572).    In *Ferry v. Campbell, supra,* it is said, in effect, that the original act was dormant, subject to be revived retroactively as to all unsettled estates in so far as personal property was concerned. So long as the estate was subject to the control of the probate court, the Legislature had the right to cure the original inheritance tax acts and make them apply to personal property of an unsettled estate.    This is the holding in *Herriott v. Potter, supra,* following *Gelsthorpe v. Furnell,* 20 Mont. 299 (51 Pac. 267, 39 L. R. A. 170).    See, also, *Prevost v. Greneaux,* 60 U. S. 1 (15 L. Ed. 572); *Arnaud v. His Executor,* 3 La. 336.

But it is claimed that the property had all been distributed when the amendatory act went into effect.    What

is meant, as we understand it, is not that the estate had been settled, for this was not true, but that the legacies had been turned over to the legatees before the act went into effect. While we may concede that this was so, still, as to the money paid the father of the Fisher heirs, there was no authority in the executors to do so, and no binding act was done in this regard until long after the law went into effect. The estate of the deceased was in probate for settlement. The executors had not filed proof of notice of their appointment, had filed no inventory of the estate, in fact had done nothing, so far as the record shows, until April of the year 1899. Was the estate so far unsettled that the State Treasurer had authority to call for the inheritance tax? This is the pivotal question on this branch of the case. Surely the claimed settlement and distribution made by the executors within a few days after their appointment did not deprive the court of jurisdiction over the funds, nor relieve the executors from liability to creditors or others interested in the estate. The payment to the father of the minor legatees was entirely without authority, and manifestly illegal, although not void. So far as the probate court was concerned, it still had jurisdiction over the estate and power to direct the executors as to the settlement thereof. This it did not lose until the final report was made and approved. The executors claim, however, that there were no debts against the estate, save for funeral expenses and medicinal attendance, and that these were paid before they made distribution; but they could not legally know that fact until a year after publication of notice of their appointment. Code 1897, sections 3348, 3349. The probate court had full power over the estate as soon as the will was probated, if not before, and the actions of the executors were subject to its approval and control until their final discharge. No matter what the provisions of the will, the estate was in court for settlement and distribution, and the executors gained their power and authority from the law, and not alone from the provisions of the

will. *Burlington Co. v. Gerlinger,* 111 Iowa, 293; *In re Van Vleck's Estate,* 123 Iowa, 90. See, also, *Shoenberger v. Institution,* 28 Pa. 465.

Our statutes make the following provisions with reference to the payment of legacies:

Sec. 3355. Specific legacies of property may, by the court, be turned over to the legatees at any time upon their giving unquestionable security by bond upon real estate as may be ordered by the court or judge, to restore the property or refund the amount at which it was appraised, if wanted for the payment of debts.

Sec. 3356. Legacies payable in money may be paid on like terms, whenever the executors possess the means which can be thus used without prejudice to the interest of any claim already filed.

Sec. 3357. After the expiration of the twelve months allowed for filing claims, such legacies may be paid without requiring the security provided for in the two preceding sections, if means are retained to pay off all claims proved or pending.

It will be observed that the court never ordered these legacies turned over to the legatees, nor was any security given by them, nor had the 12 months expired from the time of filing claims; so that the alleged distribution was entirely without authority, and in contemplation of law did not take place until approved in May of the year 1899. Appellant says, however, that these statutes refer to specific, and not to general, legacies. Let this be conceded, and, if it be true, there is no authority anywhere to turn over general legacies until the estate is settled, and in no event can this be done until the expiration of the year for filing claims. In contemplation of law, the estate was unsettled when the inheritance tax law became effective, and plaintiffs should pay the inheritance taxes upon the property received by them, which was, as we had already stated, received in contemplation of law not earlier than May 2, 1899.

None of the cases cited by appellants run counter to

these views. Their counsel contend that, as the acts of the executors were not void, no one but a creditor may complain. Let this be conceded arguendo, still the State was in a sense a creditor, and had the right to insist that the estate be settled according to law. In contemplation of law, it was unsettled when the inheritance tax law became enforceable, and this is the end of the case.

The decree dismissing the petition is correct, and it is therefore *affirmed*.