A. R. WISE, Appellee, v. O. C. PALMER, County Treasurer of Monroe County, Iowa, and THE INDEPENDENT SCHOOL DISTRICT OF ALBIA, Iowa, Appellants.

**School districts:** EXTENSION OF TERRITORY: DELEGATION OF POWER.
1 The statute providing that upon an extension of the corporate limits of a city the limits of the independent school district within the city shall be correspondingly extended, is not void because enlarging the powers of municipal officers and giving them control over the boundaries of school districts; as the municipal authorities do not determine the question of boundaries, but simply propose an extension of the limits which is determined by a vote of the people. Upon an extension of the school district in the manner thus provided jurisdiction over the added territory vests in the board of directors, a body wholly distinct from that which controls the municipality.

**Same:** EXTENSION OF TERRITORY: ELECTION: NOTICE. Although the notice of election and the proposition submitted referred only to an extension of the city limits they were sufficient, as that was the primary question: and upon an affirmative vote the boundaries of the school district were correspondingly enlarged by operation of the statute, without any notice or action by the school board.

**Same:** EXTENT OF TERRITORY: JUDGMENT: CONCLUSIVENESS. The judgment in a statutory proceeding against the city alone, vacating a portion of the added territory, was not an adjudication binding upon the school district as to the extent of its territory, regardless of how the territory was originally annexed.

Same: EXTENSION OF TERRITORY: REASONABLENESS: STATUTES. Where a statutory law is valid the courts have no power to relieve from its effect. Thus the statute providing that the boundaries of a school district shall be coextensive with the extended boundaries of a city in which it is located, but shall not be affected by a reduction of the corporate limits, is definite and unambiguous and the courts will not amend it so that any extension of territory must be reasonable.

Same: CONSTITUTIONAL LAW: DUE PROCESS. Where the territory of a school district has been legally extended the taxation of property within the new area is not a taking of property without due process.

Same: LEGISLATIVE ACTS: SCOPE OF TITLE. The provisions of a legislative act that upon the extension of the limits of a municipality the boundaries of a school district situated therein shall be correspondingly extended, but that the boundaries of the school district shall not be affected by a reduction of the limits of the municipality, are germane to and embraced in the title ''An act to empower boards of directors of school corporations to change boundary line between such corporations in certain cases;'' and the act in that respect was not void because providing the effect which the extension or reduction of the city limits would have upon the school boundaries, without action by the school board.
EVANS, J., dissenting.

*Appeal from Monroe District Court.*—HON. D. M. ANDERSON, Judge.

TUESDAY, MAY 12, 1914.

PROCEEDING to enjoin the collection of taxes for school purposes upon territory alleged to be not within the school district. From a decree in favor of plaintiff, the defendants appeal.—*Reversed.*

*John T. Clarkson, Fred Townsend* and *D. W. Bates,* for appellants.

*Mabry & Hickenlooper* and *W. E. Giltner,* for appellee.

WITHROW, J.—I. The plaintiff brings this action for himself and other persons having a common interest against the county treasurer of Monroe county and the independent school district of Albia, to enjoin the collection of taxes levied in favor of the school district. The ground upon which the action is based is that the territory on which the challenged taxes were levied was not within the limits of the Albia school district.

In October, 1909, the incorporated city of Albia, through its city council, passed a resolution to extend its city limits from its then area of 1,737 to 5,760 acres; the added territory including much land used only for agricultural purposes. Following the adoption of the resolution by the city council, the question of the extension of the corporate limits was submitted to the voters residing within the territory, and at a special election held on November 22, 1909, the proposition was carried. After the determination of the result of the special election, the mayor of Albia issued a proclamation of the result, and declared the limits of the city extended as proposed and voted upon. The proceedings for the extension of the corporate limits were conducted in compliance with the provision of the Code, section 615, and no question is raised as to the regularity of that action. As a result of the action thus taken, the independent school district of Albia assumed jurisdiction of the added territory, not theretofore a part of the district, under the provision of Code Supp., section 2793: ''When the corporate limits of any city or town are extended outside the existing independent district . . . the boundaries of said independent district . . . shall be also correspondingly extended.''

Shortly after the conclusion of the proceedings for the extension of the city corporate limits, L. W. Stason and others, residents and owners of property in the annexed territory, commenced a proceeding against the city of Albia for severance of all the territory in the included area, based upon the averment that no rights nor liabilities against the city had

occurred by reason of the land having been added to the city; that the land sought to be severed was not needed for municipal purposes which warranted its retention within the city limits; and that it would be detrimental to the owners of said property to have it subjected to the increased taxation which would result from being within the corporate limits. It also, in that proceeding, was charged that the extension of the city limits was unwarranted and unreasonable. Issue was raised, and certain proceedings and rulings being had, to which exception was taken, the case was appealed to this court, resulting in a reversal, which did not go to the questions now presented. Thereafter, the case having been remanded, it was placed upon the calendar for trial, but, without an adjudication by the trial court, excepting as such may have resulted from its final order, a stipulation of settlement and order was entered into between the parties. That stipulation provided that the court should enter an order for the severance from the city of Albia of certain described territory aggregating 3,405 acres of that which had been taken in under the proceedings for the extension of the corporate limits, restoring to the township of Troy in the severed territory the road tax, and relieving the severed territory from the burden of municipal assessments and taxes levied by the city of Albia, which was the sole defendant. The order of the trial court was based upon the stipulation, and severed the territory from the city of Albia, "under and in accordance with all the terms and conditions as to taxes and liabilities as set forth in said stipulation." This order was entered May 25, 1911, following which negotiations were had between the interested parties, with a view to the amicable adjustment of the yet existing dispute as to the boundaries of the independent school district of Albia. This effort failed, and, the county auditor having, on December 27, 1911, certified to the treasurer the taxes, the collection of which is sought to be enjoined, this action for that purpose was commenced by serving original notice on January 4, 1912, and by filing the petition on Janu-

ary 13th. The property affected by this petition is the same as that which was severed in the *Stason* case.

II. The claim of the plaintiff is that the school tax for 1911, is illegal and void, for the reason that all of the property and territory thus sought to be taxed was outside of the bounds of the school district of Albia for the following reasons:

(1) That said property is all embraced within that part claimed to have been added to the school district of Albia by the acts of the city officials and as a result of the election to extend the city limits, and is now outside of the city limits as fixed by the order in the *Stason* case.

(2) That, so far as relates to the territory involved in this action, the said extension was illegal and void from its inception, because unreasonable and unwarranted.

(3) That the district court of Monroe county, Iowa, in its judgment and order in the *Stason* case, adjudicated that ·said territory was never legally within the city limits of Albia, and that the extension was an unreasonable and unwarranted exercise of the right to extend city limits as conferred by the statutes under which said city acted.

(4) That the provisions of Code Supp. section 2793-a, that the extension of the corporate limits of a city or town outside existing independent district shall work an extension of the boundaries of the district, and that the reduction of the boundaries of a city or town shall not affect the boundaries of an independent district, are null and void, because of being in conflict with the statutes of Iowa relative to the organization and boundaries of school districts, and the jurisdiction of school officials.

(5) That the question submitted to the voters, being that of extending the city limits, was not the exact question they were to determine, and the acts of extension following such vote were null and void.

(6) That the quoted portion of the statute is incongruous matter, in conflict with its title, and with the part of the act immediately preceding it.

(7) That a proper construction of the act requires that the word "reasonably" be read into it, and that an unreasonable extension is void.

(8) That the law under which the corporate limits were extended and outside property transferred to the independent school district of Albia is in violation of article 1, section 9, Constitution of Iowa, in that under it plaintiff and the district township of Troy are deprived of property without due process of law.

(9) That the quoted portion of the statute is void, because the act of which it is a part embraces more than one subject; that such matters are not properly connected with the subject expressed in the title; and that the subject covered by that part of the act is not expressed in its title.

The defendants, not admitting the legal conclusions relied upon by the plaintiff, pleaded affirmatively, by way of estoppel and laches, that after the extension of the boundaries children residing in the territory in question attended school in the independent district without paying tuition; that estimates for school purposes were made in 1910, and that taxes for the independent district were collected upon this property in 1911; that at the school election in 1911 many of the persons living in the territory voted; that in 1911 a special election was held in the school district to pass upon the question of issuing bonds to build a new schoolhouse, and at said election many of the electors now represented by the plaintiff voted, thereby acquiescing in the acts of the defendant school district; and that, following such, expenditure of money had been made towards erecting a new building.

The trial court held that, as one of the issues in the *Stason* case was that the extension was unwarranted and unreasonable, by making a settlement by which certain property was severed, there was a confession that it was so, and that the settlement had the effect of an adjudication against the city on that question; and that the city limits not having been legally extended beyond that settled as the boundaries in the *Stason*

case, that the boundaries of the Albia independent school district would be governed by the same limitations. Decree was entered as prayed by plaintiff, and the defendants appeal.

III. Code Supp. section 615, prescribes a method by which an incorporated city or town may extend its boundaries. No question is raised in the present case but that which was done in extending the corporate limits of the city of Albia followed in all respects the requirements of the law, and as to that branch of the case we need give no further attention, excepting in its relation to the extension of the boundaries of the independent school district of Albia, which is the real subject of contention.

Nor can it be seriously questioned that under Code Supp. section 2973-a, the result of the extension of the city limits was also to extend the boundaries of the independent district of Albia, unless, for one or more of the reasons relied upon by appellee, the statute or the acts done which came within its provisions were void. And it is equally true that under that section a subsequent reduction in the territory of the city did not have the effect of automatically reducing the independent district to a territory concurrent with that of the reduced city boundaries, providing it be found that the original extension was valid, and that the statute which, without further action, enlarged the school district boundaries was constitutionally enacted, and was a valid exercise of legislative power.

IV. The act in question was passed by the twenty-seventh General Assembly, being chapter 89, and is entitled "An act to empower boards of directors of school corporations to change boundary lines between such corporations in certain cases," and, as enacted, appears in Code Supp. section 2793-a, as follows:

When the boundary line between a school township and an independent city or town district is not also the line between civil townships, such boundary may be changed at any time by the concurrence of the boards of directors; but in no case shall a forty-acre tract of land, by the government survey,

be divided; and such subdivisions shall be excluded or included as entire forties. The boundaries of the school township or the independent district may in the same manner be extended to the line between civil townships, even though by such change one of the districts shall be included within and consolidated with the other as a single district. When the corporate limits of any city or town are extended outside the existing independent district or districts, the boundaries of said independent district or districts shall be also correspondingly extended. But in no case shall the boundaries of an independent district be affected by the reduction of the corporate limits of a city or town.

It is first claimed that the sentence in the statute which declares that, upon the extension of the corporate limits, the boundaries of the school district shall be correspondingly extended is void, for the reason that it enlarges the powers of municipal officers beyond those expressly or impliedly granted by the Legislature; that they are clothed with the power to carry on its own business, and not that of any corporation. The last clause thus stated cannot be questioned as a true expression of the law, but we think it has no application to the present case. The extension of the boundaries of the school district, resulting from a like extension of the city limits, cannot have the effect of giving to the officers charged with the duty of administering the city government any control or right of control of the added territory for any other than municipal purposes. Upon its becoming a part of the independent school district, jurisdiction over it arises in the board of directors, a body unrelated in any governmental way to that one which controls the affairs of the city. The city council, in passing the resolution for extension under Code Supp. section 615, acts only in an introductory way in submitting the proposition to the qualified electors to be determined by their vote. It exercises no jurisdiction beyond that of determining the question to be submitted; and the statute under which they act in so doing confers upon

1. School districts: extension of territory: delegation of power.

them no powers which interfere with those held by the school officers. Whether in its original condition or as enlarged, there is yet in the proper school officers the exclusive jurisdiction over the territory constituting the district for all purposes connected with the maintenance of the public schools. The creation and government of all school districts, including the manner of fixing and changing boundaries, is within legislative control (*School District v. School District,* 139 Iowa, 249), and subordinate governmental organizations can act only in the manner that is designated in the law. The Legislature may provide in different ways for the extension of boundaries, and, unless a method fixed is declared to be an exclusive one, other ways provided may also be lawfully exercised, unless there is a clear repugnancy or conflict between them. Code, sections 551, 552, in providing for township and city boundaries, confer upon the board of supervisors certain powers, limiting them to such acts as will not disturb school district boundaries, unless petitioned to do so. Code, section 2743, authorized the creation of school corporations, giving to them exclusive jurisdiction in all school matters over the territory contained in their respective districts. Code Supp. section 2793-a, which we have earlier set out in full, provides, among other things, for the change of school boundaries by the concurrence of the boards of directors of the affected districts, and Code Supp. section 2794, provides the means for forming an independent district, including a city or town and contiguous territory, upon proper petition. We refer to these sections as illustrative of the fact that the legislation upon the subject of the organization and boundaries of school districts is varied to meet different conditions, each provision intended to meet a situation not provided for by other sections, and in some of them, as in the present case, made to depend upon a vote of the electors.

V. While the statute under which the city of Albia called the special election referred only to the extension of cor-

porate boundaries, and the notice of election and the sub-

2. SAME: exten-
sion of terri-
tory: election
notice.

mitted proposition was limited to that ques-
tion, there was necessarily read into it
and to the results of the election all of the
consequences which existing law had provided for such cases.
The notice and the submitted propositions were definite upon
the question to be determined, which was whether the cor-
porate boundaries of the city should be extended, and as to
that, met the requirements of the law. 15 Cyc. 325. Pri-
marily the election was not to determine the school district
boundaries, but to extend the city corporate boundaries. This
latter was regularly done, and, assuming the statute to be
valid, the result upon the school district followed by operation
of law, requiring no action by the boards of directors.

VI. It is contended that the extension of the city bound-
aries, with its resulting effect upon the independent school
district, was adjudicated in the *Stason* case as being an

3. SAME: extent
of territory:
judgment:
conclusiveness.

unreasonable and unwarranted exercise of
power, in that it subjected agricultural land
to burdensome taxation without correspond-
ing benefits. That case, as we have already noted, was a
proceeding for the severance of territory, brought under the
statute authorizing such action (Code, section 622), the only
party defendant being the city of Albia. Counsel for ap-
pellee frankly state that: "We do not claim for the adjudica-
tion in the *Stason* case that it was binding upon these de-
fendants, except in so far as it settled the legality of the
extension of the city's jurisdiction over the territory in-
volved in that order, which is the identical territory involved
in this action. The claim of the school district is through the
city of Albia if at all, and, when Albia's claim was found to be
spurious, then the court was compelled to find in the present
action that the school district's title had failed." It must
be borne in mind that the proceeding in the *Stason* case was
not a direct attack upon the extension, based upon the claims
presented in this action, but was only a statutory proceeding

for the severance of territory. While it is true that in the amendment to the petition filed in that case it was averred that the extension was unwarranted and unreasonable, there was wanting a necessary party, the independent school district; and, its rights having vested by operation of law prior to the proceeding and final judgment, it could not be bound by it. *Prouty v. Tallman,* 65 Iowa, 354; *Chase v. Kaynor,* 78 Iowa, 449.

We think it must follow that, as against the school district, the former proceeding was not an adjudication, even though it should be held that the entry of judgment upon the stipulation was as between the parties an adjudication of all questions raised in the case, and inherent in the final order of judgment. Whatever may have been the issues, this court has held that in such cases the question as to how the territory came to be annexed is immaterial. *Hanson v. Cresco,* 132 Iowa, 533.

VII. It is urged that, if it be held that the statute is valid, there must be read into it the word "reasonably," following the rule of construction of *United States v. Standard Oil Company,* 221 U. S. 1 (31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. [N. S.] 834, Ann. Cas. 1912-D), 734, and that any extension of territory, to be upheld, must be reasonable or justifiable. The part of the act now challenged is definite in its terms, having for its purpose the concurrence of the boundaries of cities and independent school districts, extending the latter as the city may be territorially enlarged, and is based, no doubt, upon the reason that conditions which justify the one must operate in like manner upon the other. It therefore is not unreasonable in its provisions, and the addition of the word "reasonable" is not necessary to give to it proper meaning. The difficulty in the present case arises in its application. The last sentence of the statute is: "But in no case shall the boundaries of an independent district be affected by the reduction of the corporate limits of a city or town." The

4. SAME: extension of territory: reasonableness: statutes.

courts have not the power to relieve from the effects of a rule of the statute if the law itself is valid. The quoted sentence of the law is definite and unambiguous, and, unless other reasons be found than have already been discussed, must be determinative.

VIII. This proceeding relates only to school taxes levied and sought to be collected on the affected territory, which, by proceedings regularly had under the statute, became a part of the independent school district; and, assuming the statute to have been constitutionally enacted, the annexation and resulting obligations in being taxed for a public purpose was not a taking of property without due process of law. *Henderson Bridge Co. v. Henderson,* 173 U. S. 592 (19 Sup. Ct. 553, 43 L. Ed. 823) ; *Stetson v. Kempton,* 13 Mass. 272 (7 Am. Dec. 145) ; *High v. Shoemaker,* 22 Cal. 363; 8 Cyc. 1130.

5. SAME: constitutional law: due process.

IX. We·are then brought to the question of the validity of the last two sentences of the statute because of alleged insufficiency of its title. Section 29 of article 3 of the Constitution of Iowa is as follows: "Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

6. SAME: legislative act: scope of title.

The title of the act in question was "An act to empower boards of directors of school corporations to change boundary lines between such corporations in certain cases." As printed in the Code Supp. section 2793-a, it is preceded by the designation or catch words "corporation limits changed." The particular claim is that the last two sentences treat of a subject not embraced in the title of the act, in that they provide as to the effect which the extension or reducing of city limits shall have upon school boundaries, without any action by the boards of

directors, and that therefore the statute to that extent is void.

The purpose of this provision of our fundamental law was stated in *Cook v. Marshall County*, 119 Iowa, 396. "The end sought to be obtained by the constitutional provision invoked by the appellants 'was to prevent the union in the same act of incongruous matters and, of objects having no connection, no relation.' And with this it was designed to prevent surprise in legislation by having matters of one nature embraced in a bill whose title expressed another."

In *Beaner v. Lucas*, 138 Iowa, 215, this court held, in accordance with the prevailing rule, that "the language . . . employed should not be given a narrow or illiberal construction"; and in *State v. Judge*, 2 Iowa, 280, it was held that the power to declare a law unconstitutional is not to be resorted to, unless it becomes necessary in a clear decisive case, but recognizing that, when a case clearly comes within the inhibition of the Constitution, the courts should so declare.

With these statements of the law as a base, we consider whether the objection now made to the statute, is of such force as to require at our hands a holding that the criticised sentences are invalid. The rule of the Constitution is that the subject of the act shall be expressed in its title, and that the act itself shall contain but matters properly connected therewith. In *Beaner v. Lucas, supra,* this court quoted with approval the rule announced in *Ritchie v. People,* 155 Ill. 98 (40 N. E. 454, 29 L. R. A. 79, 46 Am. St. Rep. 315), that "all matters are properly included in the act, which are germane to the title"; and that "the Constitution is obeyed, if all the provisions relate to the one subject indicated in the title, and are parts of it, or incident to it, or reasonably connected with it, or in some reasonable sense auxiliary to the object in view." The same rule is adhered to by this court in *State v. Forkner*, 94 Iowa, 1; *Cook v. Marshall County*, 119 Iowa, 384; *State v. Edmunds*, 127 Iowa, 339; *Sisson v. Board of Supervisors*, 128 Iowa, 464; *State v. Fairmont Creamery Co.*, 153 Iowa, 702.

The subject-matter of any act is that which is its ground-work. It is the base upon which is builded the legislative structure. The ultimate purpose of it is to meet a particular demand or situation, and, if such is given in its title, the act is not vitiated by including within it provisions which are "in some reasonable sense auxiliary to the object in view." On the other hand, the rule is given that: "A title so general as practically to conceal the subject of the statute, or a false or delusive title, will be treated as not constitutionally framed and the act held void." Sutherland, Statutory Construction, vol. 1, section 123. This is, in effect, the rule stated in *Cook v. Marshall County, supra,* and by the authorities generally. The reliance of appellee is upon the claim that the subject of the act was the powers which might thereunder be exercised by boards of directors to change boundary lines; and that of the appellants that the subject-matter was the changing of school boundaries. The statute, taken in its entirety, treated only of methods of changing school boundaries, a duty which, prior to that time, had, under the law, been placed upon the directors, the right to do which resting upon the legislative control. The first provision of the statute (2793-a) is that: "When the boundary line between a school township and an independent city or town district is not also the line between civil townships, such boundary may be changed at any time by the concurrence of the board of directors." This permits such change to be made in all cases when the existing boundary is not the line between civil townships. The next sentence of the statute authorizes in the same manner the change by boards of directors by extending the line to civil townships, even though it results in the inclusion of one with the other as a single district. The evident purpose of these provisions was to permit such action as would make the civil township the territorial base of school district organization. To meet these conditions the concurrence of boards of directors was made necessary. The next sentence, being the one which the appellee particularly assails as outside the title of the act, in effect, removes

the limit of the civil township boundary line when the corporate limits of the city are extended. The statute in its terms treated only the subject of changing the boundaries of school districts. The means by which changes could be made were set out in the act. We cannot agree with the contention of the appellee that its title was a limitation to such acts as might be done only by boards of directors, but hold that, while recognizing them as the proper authorities in certain of the cases arising under the law, such was but a detail of the title, which was as to the changing of boundaries. Following the rule that the provision of the Constitution must be liberally interpreted, we fail to find such variance between the title and the law as would justify us in holding the act or any part of it to be invalid.

X. We need give no extended consideration to the questions of laches and estoppel other than to say that the record shows that the plaintiffs exercised reasonable diligence in the assertion of their rights, and that from it we do not find facts which support the plea of estoppel.

Finding that the school boundaries were lawfully extended, it follows that the decree of the trial court must be, and it is,—*Reversed.*

LADD, C. J., and DEEMER, GAYNOR, and PRESTON, JJ., concur.

EVANS, J., dissents.