SWAN J. WELANDER et al., Appellees, v. E. H. HOYT, Treasurer of the State of Iowa, Appellant.

**TAXATION:** Tax Accrues on Death of Decedent—Effect of Subse-
1   quent Treaty. The right of the state to a collateral inheritance tax accrues,—becomes vested,—and the lien therefor attaches, immediately upon the death of decedent, even though, by grace of statute, the remainderman *may* defer the appraisal, computation, and actual payment until a day subsequent to his day of actual enjoyment. Such accrued right may not be affected by the subsequent adoption of a treaty giving foreign beneficiaries the rights possessed by citizens of the United States.

**TAXATION:** Collateral Inheritance Tax—Instant or Deferred Pay-
2   ment. A remainderman, charged with a collateral inheritance tax, may exercise either of two alternative rights in the payment of the tax, viz.: (1) He may, immediately upon the death of decedent or later, cause the property to be appraised, and pay on the *then* value; or (2) he may defer appraisal until he passes into actual enjoyment of the property, and pay on the *then* value.

*Appeal from Montgomery District Court.—*E. B. WOODRUFF, Judge.

APRIL 6, 1920.

ACTION against the treasurer of state to recover an excess charge made and collected upon a collateral inheritance or devise. The action is prosecuted under the provision of Section 1481-a43, Code Supplement, 1913. The trial court entered judgment for the excess, and the defendant has appealed.—*Reversed.*

*H. M. Havner*, Attorney General, *B. J. Powers*, Assistant Attorney General, and *Paul W. Richards*, County Attorney, for appellant.

*Ralph Pringle*, for appellees.

EVANS, J.—The estate involved is that of Nels Johnson, in Montgomery County. The decedent died testate, in 1905. By his will, he gave to his surviving widow a life estate in all his real estate, and one undivided half of the remainder to his own legal heirs, and the other undivided half thereof to the legal heirs of his widow. Only the interest of the legal heirs of Nels Johnson is involved herein. The surviving widow died in 1912, whereby the remaindermen came into full enjoyment of their estate. Thereupon, the tax appraisers appraised the real estate at its then market value, and a tax thereon was exacted at the statutory rate. The legal heirs of Nels Johnson were 19 in number. They were and are subjects of Sweden. Of these 19 heirs, 2 were related to the decedent as brother and sister. The other 17 heirs were more distantly related. Pursuant to our statute, the state treasurer exacted a tax of 10 per cent on the respective shares of the brother and sister, and of 20 per cent on the other shares. The excess

1. TAXATION: tax accrues on death of decedent: effect of subsequent treaty.

claimed is the amount over and above 5 per cent upon each
share. This claim is predicated upon the terms of the
treaty between the United States and the Kingdom of
Sweden, which was duly ratified and promulgated in Au-
gust, 1911. There is no dispute of fact in the case. The
amount of the excess is not in dispute, if excess there be.
The issue between the parties is wholly one of law, and is a
narrow one. That the treaty is the paramount law is rec-
ognized by both parties. It is conceded that the state may
not exact or assert a greater rate of tax than is permitted
by said treaty. It is also conceded that the treaty does
not operate retroactively. The specific question is:
When did the liability of the devisees and their res-
pective estates to the state for the inheritance tax
first attach or accrue? Concededly, such liability ac-
crued either at a time prior to August, 1911, or else it did
not accrue until the death of the life tenant, in 1912. If
the former, it antedated the treaty, and is not affected by
its subsequent adoption. If the latter, the provisions of
the treaty are controlling. Under these provisions, no
greater tax may be exacted from subjects of Sweden than
is exacted from citizens of the United States.

In *Prevost v. Greneaux, Treas.*, 60 U. S. 1 (15 L. Ed.
572), a kindred question came before the Supreme Court of
the United States. In that case, a statutory inheritance
tax had been collected by the state of Louisiana. In the
absence of heirs, the entire estate passed into the possession
of the surviving widow. No heir of the decedent appeared
until after the death of such widow. In the meantime, a
treaty with France had come into effect, under which the
collateral heir claimed exemption from the tax. It was held
that, under the statute of Louisiana in force at the time of
the death of the decedent, the right of the state to the tax ac-
crued, even though no effort had been made to collect the
same. It was held that the treaty was not applicable.

In *Clapp v. Mason*, 94 U. S. 589, an analogous question came before the same court. That case involved a construction of the Collateral Inheritance Tax Act of Congress of June 30, 1864. The estate of the decedent passed first to a life tenant, who was exempt from such inheritance tax, and the remainder to a devisee who was not exempt. Before the death of the life tenant, this act of Congress was repealed. The question was whether the repeal of the act relieved the remainderman from any liability for the tax after the death of the life tenant. The act in question provided:

"That such tax or duty shall be due and payable whenever the party on whose distributive share of an estate the tax is charged shall be entitled to the possession or enjoyment thereof."

Construing the act, it was held that no right to tax accrued thereunder until after the death of the life tenant, when the tax should become *payable,* and that the repeal of the act before the death of the life tenant, terminated the right of the Federal government to exact the tax thereafter. Of these two cases, the appellant builds upon the first, and the appellee upon the second. These two cases and the distinction between them illustrate how narrow the controlling question is herein.

Whether the treaty is applicable, therefore, is to be determined by the proper construction of the Iowa statute in force prior to August, 1911. If it be true that, under a fair construction of this statute, a liability for the tax attached as a lien upon the devised estate immediately upon the death of the decedent, then the tax was asserted and, in legal sense, exacted at that time, even though grace of time was allowed until after the death of the life tenant for the actual payment of same. It may well be presumed that the tax *accrues* only when it becomes *pay-*

2. TAXATION: collateral inheritance tax: instant or deferred payment.

*able,* unless, by fair construction of the statute, it affirm-
atively appears otherwise. This was the presumption fol-
lowed in *Clapp v. Mason,* supra. But the decisive question,
nevertheless, is, When did the liability for the tax *accrue?*
and not, When did it become payable? So far as material
for our consideration, our present statute was enacted prior
to August, 1911, and we turn thereto. The following ex-
cerpts will serve as sufficient basis for our discussion:

"Sec. 1481-a. The estates of all deceased persons,
* * * which shall pass by will or by the statutes of in-
heritance of this or any other state or country, or by deed,
grant, sale, gift, or transfer made in contemplation of the
death of the donor, or made or intended to take effect in pos-
session or enjoyment after the death of the grantor or donor,
to any person, or for any use in trust or otherwise, other
than to or for the use of persons, or uses exempt by this
act shall be subject to a tax * * * Any person bene-
ficially entitled to any property or interest therein because
of any such gift, legacy, devise, annuity, transfer or inher-
itance, and all administrators, executors, referees and trus-
tees, and any such grantee under a conveyance, and any such
donee under a gift, and any such legatee, annuitant, dev-
isee, heir or beneficiary, shall be respectively liable for all
such taxes to be paid by them respectively. The tax afore-
said shall be for the use of the state, *shall accrue at the
death of the decedent owner,* and shall be paid to the treas-
urer of state within eighteen months thereafter, except when
otherwise provided in this act, and shall be and remain a
*legal charge against and a lien upon such estate,* and
any and all of the property thereof from the death of the
decedent owner until paid. Real estate sold under order
of court shall be released from the lien imposed by this act
and the lien shall attach to the proceeds of such sale, pro-
vided that prior to the approval of such sale there shall have

been given by the person making such sale a good and sufficient bond conditioned to secure the payment of all tax secured by the lien so released. This provision shall not be construed to relieve from personal liability any person owing such tax or whose duty it is to collect and pay such tax to the treasurer of state.

"Sec. 1481-a5. Whenever it appears that an estate or any property or interest therein is or may be subject to the tax imposed by this act, the clerk shall issue a commission to the appraisers, who shall fix a time and place for appraisement, except that if the only interest that is subject to such tax is a remainder or deferred interest upon which the tax is not payable until the determination of a prior estate or interest for life or term of years, he shall not issue such commission until the determination of such prior estate, *except at the request of parties in interest who desire to remove the lien thereon.*

"Sec. 1481-a10. When any person, whose estate over and above the amount of his debts, as defined in this act, exceeds the sum of $1,000, shall bequeath or devise any real property to or for the use of persons exempt from the tax imposed by this act, during life or for a term of years, and the remainder to a collateral heir, said property upon the determination of such estate for life or years, shall be appraised at its then actual market value from which shall be deducted the value of any improvements thereon, or betterments thereto, if any, made by the remainderman during the time of the prior estate, to be ascertained and determined by the appraisers and the tax on the remainder shall be paid by such remainderman as provided in the next succeeding section.

"Sec. 1481-a13. When in case of deferred estates or remainder interests in personal property or in the proceeds of any real estate that may be sold during the time of a life,

term or prior estate, the persons interested who may desire to defer the payment of the tax until the determination of the prior estate, *shall file with the clerk of the proper district court a bond* as provided herein in other cases, such bond to be renewed every two years until the tax upon such deferred estate is paid. If at the end of any two-year period the bond is not promptly renewed as herein provided and the tax has not been paid, the bond shall be declared forfeited, and the *amount thereof be forthwith collected.* When the estate of a decedent consists in part of real and in part of personal property, and there be an estate for life or for a term of years to one or more persons and a deferred or remainder estate to others, and such deferred or remainder estate is in whole or in part subject to the tax imposed by this act, if the deferred or remainder estates or interests are so disposed that good and sufficient security for the payment of the tax for which such deferred or remainder estates may be liable can be had because of the lien imposed by this act upon the real property of such estate, then payment of the tax upon such deferred or remainder estates may be postponed until the determination of the prior estate without giving bond as herein required to secure payment of such tax, and *the tax shall remain a lien upon such real estate* until this tax upon such deferred estate or interest is paid.

"Sec. 1481-a16. The value of any annuity, deferred estate, or interest, or any estate for life or term of years, subject to the collateral inheritance tax, shall be determined for the purpose of computing said tax by the rule of standards of mortality and of value commonly used in actuaries' combined experience tables as now provided by law. The taxable value of annuities, life or term, deferred or future estates, shall be computed at the rate of four per cent per annum of the appraised value of the property in which such estate or interest exists or is founded. *Whenever it is desired to remove the lien of the collateral inheritance*

*tax* on remainders, reversions, or deferred estates, parties owning the beneficial interest may pay at any time the said tax on the present worth of such interests determined according to the rules herein fixed."

Construing the foregoing, must it be said that the state asserted a lien for the tax against the estate of the remainderman immediately upon the vesting of such estate and before the enjoyment thereof? Could there be a lien for the tax before a right to the tax had accrued? We direct our attention first to those features of the statute which favor the contention of the appellee. The appraisal provided for, of the estate of the remainderman after the death of the life tenant is based upon its "then market value." Again, an exception is embodied in Section 1481-a, as follows: "Except when otherwise provided in this act." Does this exception negative all the recitals of the sentence in which it is contained, or only the recital immediately preceding it, which provides for time of payment?

Conceding that the appraisal of the estate in remainder, upon its market value as it is after the death of the life tenant, tends to the support of appellee's theory, the fact remains that other provisions of the statute permit an appraisal to be made at any time after the death of the decedent, at the option of the remainderman, whereby the then value of the property may be appraised, and whereby the value of the estate in remainder may be reduced to its present worth; and the present worth of the tax, based upon the expectancy of the life tenant, may be ascertained and paid by the remainderman, and the lien of the tax thereby discharged. These provisions wholly negative the inferences which might otherwise be drawn from the fact of an appraisal after the death of the life tenant, based upon the *then* market value. Taken together, all these provisions lend themselves to the inference that the postponement of payment until the day of enjoyment is a mere grace of time,

which the remainderman may accept or reject at his option. The fact that the acceptance of this grace is attended with the risk of increased valuation does not negative such in-ference. We deem it clear, also, that the exception con-tained in Section 1481-a which we have above pointed out refers to the time of payment, and to nothing more. Not only does the statute repeatedly assert a lien, in express terms; it expressly declares, also, the *accrual* of the tax at the death of the decedent.

"The tax aforesaid  *  *  *  shall accrue at the death of the decedent owner,  *  *  *  and shall be and remain a legal charge against and a lien upon such estate, and any and all of the property thereof from the death of the de-cedent owner until paid." Section 1481-a, Code Supplement, **1913.**

We see no escape from adopting the construction con-tended for by the appellant. It follows, therefore, that the rights of these appellees were already fixed before the treaty in question went into effect. They took their inheritance and their devise by statutory right. The statutory right thus accorded to them was burdened with a statutory lien for the tax. To that extent, therefore, their right to the inheritance and to the devise was limited. The extent of their burden and of the right of the state to the tax was fixed and vested before the treaty came into effect. The treaty did not purport to be retroactive, but prospective only. It would not, therefore, change the existing rights of the parties, as they were before it went into effect. It fol-lows, therefore, that there was no excess tax collected, and the judgment below must be—*Reversed.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.