## IN RE ESTATE OF CHRIST PEDERSEN.

**STATUTES:** Construction—Unreasonable Statute. Courts must apply
1   a *definite, specific, and unambiguous* provision of a statute as written,
even though it is wholly inconsistent with the future policy of the
state, as reflected in other provisions of the statute, and even though
it is equally inconsistent with the past statutory policy of the state.
*The legislature, within the range of its constitutional power, has the
right to enact an unreasonable statute.* So held where the statute, in
providing the rate of tax on inheritances, made an exception as to a
small class of estates, for which, apparently, no reason exists.

**CONSTITUTIONAL LAW:** Local or Special Laws. The Inheritance
2   Tax Act is in no sense a "local or special" law for the "assess-
ment and collection of taxes for state purposes."

**CONSTITUTIONAL LAW:** General Rule of Construction. Principle
3   reaffirmed that a legislative act will be declared unconstitutional
only when it is clearly and unmistakably violative of the Consti-
tution.

**CONSTITUTIONAL LAW:** Uniform Operation—Permissible Classifica-
4   tion. In fixing the rate of inheritance tax, the legislature may
validly classify estates in such manner that one succeeding to the
estate of a deceased who died *before* the law took effect shall pay
at a certain rate, while one succeeding to the estate of a deceased
who dies *after* the law takes effect shall pay at a different rate.

**TAXATION:** Inheritance Tax—Right to Waive Vested Tax. The state,
5   through its legislature, may constitutionally waive its right to a
*vested* inheritance tax and, prior to the payment of the tax, substi-
tute a new and lower rate of tax.

**STATUTES:** Subject and Title of Act—General Rule. The constitu-
6   tional provision that a legislative act shall embrace "but one sub-
ject and matters properly connected therewith" does not prohibit
the uniting in one act of *any number of provisions having one general
object,* fairly indicated in the title.

**TAXATION:** Inheritance Tax—Treaty Prohibiting Discrimination—
7   Nonapplicability. A treaty with a foreign country which, in effect,
provides that the levy of taxes on property passing to the alien citi-
zens of the foreign country must not be greater than the tax on prop-
erty passing to citizens of this country, does not apply to an inheri-
tance tax—a tax, not on the *property,* but "*on the succession* to
property."

*Appeal from Shelby District Court.*—GEORGE W. CULLISON, Judge.

JANUARY 15, 1924.

REHEARING DENIED JUNE 28, 1924.

APPLICATION by an administrator for refund of a collateral inheritance tax. The state treasurer resisted the application. The court granted the relief sought, and the state treasurer appeals.—*Affirmed.*

*Ben J. Gibson,* Attorney-general, *B. J. Powers,* Assistant Attorney-general, and *V. H. Beyers,* County Attorney, for appellant.

*Shelby Cullison* and *Rosenstone & Shanesy,* for appellee.

FAVILLE, J.—The cause was submitted upon the pleadings and a stipulation of facts. It appears therefrom that the decedent, Christ Pedersen, died intestate, on or about the 7th of January, 1918; that, at the time of his death, he owned real estate of the value of $12,000, and had money on deposit to the amount of $509.99. The claims, costs, and expenses of administration of the estate aggregated $2,066.55, leaving a net balance of $10,443.55. At the time of his death, the decedent was a citizen of the kingdom of Denmark. The entire estate passed to collateral heirs, some of whom are residents of the United States, and others are nonresident aliens, residing in the kingdom of Denmark.

There was assessed against the nonresident alien collateral heirs a collateral inheritance tax of twenty per cent of the amount going to said heirs, which said tax the administrator of said estate paid, under protest. This action was brought to recover fifteen per cent of the tax so paid, it being the contention of appellee that, under the provisions of the statutes of Iowa and of a treaty between the United States and the kingdom of Denmark, the amount of collateral inheritance tax assessed upon the

portion of said estate going to said nonresident alien heirs can not exceed five per cent of the value of the interest so passing.

I.  The original collateral inheritance law of this state was Chapter 28, Acts of the Twenty-sixth General Assembly, which was carried into the Code of 1897 as Chapter 4, Title VII.  This act was subsequently amended and re-enacted, as Sections 1481-a *et seq.* of the Code Supplement of 1913.

1. STATUTES: construction: unreasonable statute.

The thirty-ninth general assembly enacted a new statute with reference to the taxation of inheritances.  This act created an innovation in the laws of this state, in providing for a direct inheritance tax (Chapter 38, Acts of the Thirty-ninth General Assembly).  It also recodified the collateral inheritance tax law. Section 1 of said act repealed Chapter 4, Title VII, of the Code. Some of the sections of the collateral inheritance law appearing in the Code Supplement of 1913 were repealed, and others were amended, by the new statute.

Section 4 of said Chapter 38 pertains to the rate of tax, and provides that property or any interest therein or income therefrom subject to the provisions of this act shall be divided into two general classes.  Division a of said section provides for the direct tax; Division b contains the following provision:

"Provided, however, that when property or any interest therein shall pass to heirs, devisees or other beneficiaries subject to the tax imposed by this chapter, who are aliens, nonresidents of the United States, the same shall be subject to a tax of twenty per centum of its true value except when such foreign beneficiaries are brothers or sisters of the decedent owner or are within the class described in Paragraph a of this section, when the rate of tax to be assessed and collected therefrom shall be ten per centum of the value of the property or interest so passing."

Said Chapter 38 also contains a separate section (Section 16) which is as follows:

"As to estates of decedents passing to beneficiaries named in Paragraph a of Section four (4) hereof, this act shall apply only where decedent dies after the taking effect of this act, and as to estate of decedents passing to beneficiaries named in Para-

graph b of Section four (4) of this act, the rate of tax shall be five per cent (5%) as to all persons dying before this act takes effect.''

Appellee's action rests primarily upon the last clause of said Section 16, as follows:

''As to estate of decedents passing to beneficiaries named in Paragraph b of Section four (4) of this act, *the rate of tax shall be five per cent (5%) as to all persons dying before this act takes effect.*''

It is conceded in the record that the decedent in this case died before said Chapter 38 took effect, which was on March 19, 1921.

On the face of the statute, it must be conceded that appellee comes squarely under the very language of the act. The estate in question is one passing to beneficiaries named in Paragraph b of Section 4 of the act, and the decedent died before the act took effect. Under the express language of the statute, the rate of tax in such an instance ''shall be five per cent.'' So says the act.

There can be no question that, prior to the enactment of said Chapter 38, Acts of the Thirty-ninth General Assembly, under the laws then in force, property passing to collateral heirs of a decedent who were aliens and nonresidents of the United States was subject to a tax of twenty per cent of its value. Section 4 of Chapter 38 provides for a tax of twenty per cent on all property or any interest therein passing to heirs, devisees, or other beneficiaries subject to the tax who are aliens, nonresidents of the United States, with an exception that, as to certain specified beneficiaries, the rate to be assessed shall be ten per cent of the value of the property or interest so passing. Having done this, however, the legislature, for some reason, saw fit to enact Section 16 of the act, providing for a retroactive effect, and by its terms expressly and definitely provided that the rate of tax as to *all* beneficiaries named in Paragraph b is to be ''*five per cent (5%) as to all persons dying before this act takes effect.*''

Appellant argues that, if this clause of Section 16 is to be construed and applied literally, it is wholly inconsistent with

the settled policy of the state, as previously existing, and as evidenced in the other provisions of said Chapter 38 for the future. It is urged that it is contrary to the intention of the legislature to provide that there shall be an inheritance tax of twenty per cent on such estates generally passing to alien non-residents, and to reduce it to five per cent as to estates of "all persons dying before this act takes effect."

If the language of this section of the act were obscure, and required construction, it would be proper for us to take into consideration, among other things, the intention of the legislature in enacting it, as bearing on the question of its proper interpretation. But such is not the case. The language of the act is clear, definite, and specific. The legislature saw fit to adopt the statute, with its general provisions for a tax of twenty per cent upon estates passing to heirs, devisees, or beneficiaries, except certain ones, who were alien nonresidents. This was wholly consistent with the policy of the state, as evidenced in the then existing statute. It was likewise consistent with the general terms of the statute for the future. For some reason which does not appear from any of the provisions of the act itself, and for which no good cause has been suggested in argument, the legislature saw fit to provide that a tax of only five per cent should be assessed against such estates so passing where the estate was that of a person dying before this act took effect.

It is suggested in argument that the legislature made a mistake in inserting this section in the act, and did not intend thereby to provide that estates that would otherwise be subject to a tax of twenty per cent should pay only five per cent, merely because the estate happened to be one of a person dying before the act became effective. There is much force in the argument that there is an apparent inconsistency between the provisions of this section and the statute previously existing, and also the other provisions of the act for taxation of estates in the future. Just why the legislature should see fit to provide that estates of persons who had died before the taking effect of this act, where the tax had not been paid, should pay only a five per cent tax on the portion of the estate passing to alien nonresidents, and that other estates that had heretofore so passed or should

hereafter so pass should pay a tax of twenty per cent under such circumstances, is not manifest. But we cannot inquire in this proceeding into the motives which actuated the legislature. The general assembly in its wisdom has seen fit to frame the statute in this manner, and we have no other alternative than to apply the statute as we find it written, according to its definite, specific, and unambiguous terms. Unless it is void for some other reason than the mere fact that it is at variance with the prior and the future policy of the state in said regard, it must be upheld. It was a matter for legislative, and not judicial, determination.

II. It is contended, however, that the statute in question is unconstitutional.

We consider the questions argued as to the unconstitutionality of the statute, without deciding whether or not the state has a right to question the constitutionality of an act passed by the general assembly providing for a tax "for 2. CONSTITUTIONAL LAW: local or special laws. the use of the state," and expressly reserving that question from all consideration of the constitutionality of the act in question.

Section 30, Article 3, provides:

"The general assembly shall not pass local or special laws in the following cases:

"For the assessment and collection of taxes for state, county, or road purposes; * * *

"In all the cases above enumerated, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state; * * *"

It is only when legislative enactments clearly and unmistakably infringe upon constitutional provisions that the court should interfere with the established prerogatives of the co-ordinate branch of the government. This rule 3. CONSTITUTIONAL LAW: general rule of construction. is fundamental, and has been frequently recognized by this court. *Santo v. State,* 2 Iowa 165; *State v. Fairmont Creamery Co.,* 153 Iowa 702; *Hunter v. Colfax Consol. Coal Co.,* 175 Iowa 245; *Kimball v. Board of Supervisors,* 190 Iowa 783.

It cannot properly be said that the statute in question is

either a local or special law for the assessment and collection of taxes for state purposes. It is a general law, of state-wide application, and in no proper sense does it come under the designation of a "local" or "special" law. There is no limitation upon its general and uniform operation throughout the state, with regard to all classes of estates similarly affected. The statute in question does not come within the limitations and provisions of the quoted section of the Constitution.

III. Section 6, Article 1, of the Constitution provides:

"All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen or class of citizens, privileges or immunities, which upon the same terms shall not equally belong to all citizens."

4. CONSTITUTIONAL LAW: uniform operation: permissible classification.

It is contended that the statute in question is violative of the provisions of said section. We do not so regard it. The statute by its terms is a law of a general nature, and has a uniform operation. It does not grant to any citizen or class of citizens any privileges or immunities which, upon the same terms, shall not equally belong to all citizens. It is true that the act in effect makes a classification of estates of "all persons dying before this act takes effect," different from the classification of estates of persons dying after the act takes effect. But the statute is general and uniform in its application as to all who come within either of the classes. That is to say, all estates of all persons within the state of Iowa that are subject to the provisions of this tax shall pay a tax of five per cent where the person whose estate is so subject to the tax died before the act became effective,—to wit, prior to March 19, 1921. The estates of all persons liable for the tax dying after the act became effective, are subject to a different rate of taxation.

The policy of the legislature in making this classification is not a proper subject of judicial review. The classification is one that is not so arbitrary and unreasonable that it must be held to be void, under the provisions of the Constitution. It applies uniformly throughout the state, to all who come within the respective classes. All estates of all persons subject to the tax who died before the act took effect are assessed in the same

manner and at the same rate. It does not render the act un-
constitutional and void because the same statute provides that
all estates of all persons dying after the statute takes effect shall
be assessed at the same rate, which shall be other and different,
however, than the rate assessed against those who died before
the act took effect. As bearing on the question, see *State v. Fair-
mont Creamery Co.*, supra; *City of Des Moines v. Bolton*, 128
Iowa 108; *State v. Grefe*, 139 Iowa 18; *Hubbell v. Higgins*, 148
Iowa 36; *State v. McGuire*, 183 Iowa 927; *Sisson v. Board of
Supervisors*, 128 Iowa 442; *Barbier v. Connolly*, 113 U. S. 27;
*Hayes v. Missouri*, 120 U. S. 68; *Orient Ins. Co. v. Daggs*, 172
U. S. 557, 562.

IV. It is argued in behalf of appellant that, under the
prior statute, the state had a vested right in a tax of twenty
per cent upon the property or interest passing to the alien non-
resident beneficiaries of this estate, at the time

5. TAXATION: in-
heritance tax:
right to waive
vested tax.

Chapter 38, Acts of the Thirty-ninth General As-
sembly, was enacted. Under the provisions of
the former statute, "the tax aforesaid shall be for the use
of the state, shall accrue at the death of the decedent owner,
and shall be paid to the treasurer of state within eighteen
months thereafter." It is the contention of appellant that
this tax for the use of the state accrued at the death of the
decedent, and that the right of the state became vested
therein.

The tax had not been paid by the administrator. The
former statute provided that such payment should be made
within eighteen months from the date of the death of the
decedent, and provided for a penalty for failure to make pay-
ment within said time. Prior to the enactment of Chapter
38, Acts of the Thirty-ninth General Assembly, the right of
the state to a tax of twenty per cent against the property of
the decedent passing to nonresident aliens had accrued under
said statute. The provisions of Section 16, Chapter 38, Acts
of the Thirty-ninth General Assembly, were directly made
applicable to such a situation, and expressly provided that
"the rate of tax shall be five per cent as to all persons dying be-
fore this act takes effect."

Under the former statute, the right of the state to an inheritance tax of twenty per cent accrued,—that is, became fixed and vested, and the lien therefor attached,—immediately upon the death of the decedent, even though, by virtue of the statute, the time of payment was postponed. *Welander v. Hoyt,* 188 Iowa 972. The question at this point is whether there is any constitutional inhibition upon the right of the legislature to enact a statute that should change the right of the state as to the amount of tax that had so vested under a prior statute. Counsel for appellant cite and rely at this point upon *In re Estate of Stanford,* 126 Cal. 112. That case, however, was decided under a provision of the Constitution of California which provides that the legislature of that state shall not pass any law ''releasing or extinguishing, in whole or in part, the indebtedness, liability, or obligation of any corporation or person to this state, or to any municipal corporation therein.'' Article IV, Section 25, Constitution of California. There is no such provision in the Constitution of this state, nor anything analogous to it. We are not cited to any provisions of the Iowa Constitution that limit the power of the legislature of the state to enact a statute of this kind, providing for a different rate of taxation in behalf of the state upon property than one previously existing, and to make such new rate apply in lieu of a former rate, even though the tax had already accrued and become vested under the former rate. We find no constitutional inhibition upon the power of the general assembly to deprive the state of its right to an accrued tax, if the legislature in its wisdom sees fit so to do.

V. It is argued that Chapter 38, Acts of the Thirty-ninth General Assembly, is unconstitutional, in that it does not conform to the provisions of Section 29, Article 3, of the Constitution, which is as follows:

''Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such **6. STATUTES: subject and title of act: general rule.** act shall be void only as to so much thereof as shall not be expressed in the title.''

The title of the act in question is as follows:

"An act to repeal the law as it appears in the following sections of the Code: fourteen hundred seventy (1470), fourteen hundred seventy-one (1471), fourteen hundred seventy-two (1472), fourteen hundred seventy-three (1473), fourteen hundred seventy-four (1474), fourteen hundred seventy-five (1475) and fourteen hundred eighty (1480), (C. C. Sections 4721, 4723, 4731, 4732, 4734, 4739 and 4741), and to amend the law as it appears in Chapter four (4), Title seven (VII), Supplement to the Code, 1913, (C. C. Chapter twenty-one [21], Title fourteen [XIV]), relating to the assessment and collection of taxes upon devises, bequests, legacies, gifts and other transfers of property made to direct heirs, as well as to others, and to make further provision for the collection of both direct and collateral inheritance taxes and to have such funds so collected go into the general funds of the state."

It has been generally and uniformly held that the language of the Constitution in this respect should not be given a narrow or limited construction. It is not necessary that the subject of the bill shall be specifically and exactly expressed in the title, or that the title shall be an index of the details of the act. The constitutional provision is not intended to prohibit the uniting in one bill of any number of provisions having one general object, fairly indicated by the title. It is within the power of the legislature, without doing violence to the constitutional limitation, to include in a statute the provisions for the means which are reasonably adapted to secure the objects intended by the title. It is not necessary that every provision of the several sections of the statute shall be enumerated in the title of the act. The title to the act in question fairly meets the constitutional requirement. See *Sisson v. Board of Supervisors,* supra; *Beaner v. Lucas,* 138 Iowa 215; *Wise v. Palmer,* 165 Iowa 731; *State v. Hutchinson Ice Cream Co.,* 168 Iowa 1; *Beresheim v. Arnd,* 117 Iowa 83; *State v. Shroeder,* 51 Iowa 197; *Martin v. Blattner,* 68 Iowa 286; *Richman v. Supervisors,* 77 Iowa 513; *City of Newton v. Board of Supervisors,* 135 Iowa 27; *State v. Fairmont Creamery Co.,* supra; *McGuire v. Chicago, B. & Q. R. Co.,* 131 Iowa 340.

VI. In 1826, the United States government entered into a treaty with the kingdom of Denmark. Article VII of said treaty is as follows:

"The United States and his Danish majesty mutually agree that no higher or other duties, charges or taxes of any kind shall be levied in the territories or dominions of either party, upon any personal property, money or effects of their respective citizens or subjects, on the removal of the same from their territories or dominions reciprocally, either upon the inheritance of such property, money or effects, or otherwise, than are or shall be payable in each state upon the same, when removed by a citizen or subject of such state, respectively."

7. TAXATION: inheritance ·tax: treaty prohibiting discrimination: nonapplicability.

Under this treaty, two questions arise that are pertinent to the instant case: First, is the treaty a limitation upon the power of the state to impose an inheritance tax upon property situated in this state which passes to aliens who are residents of the kingdom of Denmark; and second, if the treaty is a limitation upon the power of the state to impose the inheritance tax, does the treaty prohibit such a tax on real estate, or is it limited in its effect solely to personal property?

So far as this treaty is involved, Chapter 38, Acts of the Thirty-ninth General Assembly, is of the same general character as the prior statute, in imposing a tax upon the estate of a decedent that passes to an alien who is a nonresident. The former statute was before us for consideration in the case of *In re Estate of Anderson,* 166 Iowa 617. In that case, said Article VII of the treaty between the United States and the kingdom of Denmark was considered. The question was presented that, under said treaty, the state could not impose a collateral inheritance tax upon property passing to aliens who were residents of the kingdom of Denmark that was any greater than the tax imposed by the state upon its own citizens. The contention was that the exaction of more than a five per cent tax was in violation of the treaty rights of the legatees, who were residents of the kingdom of Denmark. In said case, we reaffirmed the declaration previously made in *Herriott v. Bacon,* 110 Iowa 342, that the collateral inheritance tax is a "tax on the succes-

sion to property.'' We said, ''The authorities are agreed that this is neither a property nor a personal tax.'' We also said:

''The statute may well be construed as regulating the transmission of the property of deceased persons, and, independent of treaty right, neither the unwritten law nor the Constitution prohibits discrimination between citizens and foreigners in these respects.''

After a review of the authorities, we said:

''The court, as we think, rightly adjudged the statutes relating to the exaction of an inheritance tax not in conflict with the provisions of the treaty with Denmark.''

The *Anderson* case was appealed to the Supreme Court of the United States, and was there affirmed (245 U. S. 170).

The present statute does not differ in any substantial degree from the former statute, in any such manner as to bring it within the provisions of the treaty with the kingdom of Denmark. The question is, therefore, not an open one in this state. We have no disposition to depart from the rule announced in the *Anderson* case; and, adhering thereto, we now hold that the provisions of Chapter 38, Acts of the Thirty-ninth General Assembly, in imposing an inheritance tax upon an estate passing to aliens who are residents of the kingdom of Denmark, greater than is imposed upon citizens of the United States, are not in contravention of the provisions of Article VII of the treaty between the United States and the kingdom of Denmark.

Since we hold that the treaty with Denmark is not a limitation upon the power of the state to enact the statute in question and to collect the tax provided for therein against aliens who are residents of the kingdom of Denmark, it follows that it is unnecessary that we construe the word ''effects'' in said statute, and determine whether or not, as used in said statute, the term is broad enough to include real estate. The treaty in question is not a limitation upon the power of the state to impose the tax provided for by said Chapter 38, Acts of the Thirty-ninth General Assembly, and it is therefore immaterial whether the word ''effects'' in the treaty should be construed to include real estate or should be limited solely to personal property. In either event, the treaty is not a limitation upon the power of the

state to impose the tax upon the succession. We discussed some-
what the meaning of the word "effects" in the opinion in the
*Anderson* case, but did not decide the question; nor do we now
do so. The question of the "most favored nation" clause in the
treaty is not involved on this appeal, and we express no opinion
in regard thereto.

For the reasons pointed out, the decree of the district court
directing the state treasurer to refund all of the tax paid by the
administrator in excess of five per cent was correct, and the
order appealed from must be, and the same is,—*Affirmed.*

All the justices concur except De Graff, J., not participating.